IN RE ASSIGNMENT OF THOMAS A. MANSFIELD, JOHN WYMAN, Assignee.

**General Assignments:** WRONGFUL DISCHARGE OF ASSIGNEE: *Report and accounting.* Where an assignee for the benefit of creditors did not include about three thousand dollars in money received from the sale of goods either in the inventory, the property accounted for, or his reports, and there was also a discrepancy between the inventory and the property accounted for, it was error to discharge such assignee without an explanation of the shortage.

**RIGHT OF CREDITOR TO EXCEPT TO REPORT.** A creditor of an estate assigned for the benefit of creditors, being entitled to part of the proceeds to be distributed, has a right to file exceptions to the report of the assignee, and to be heard thereon.

*Estate owns profits made after assignment.* Profits made in a business after its assignment for the benefit of creditors belong to the estate, and not to the assignee, and he must account for them.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

WEDNESDAY, JANUARY 23, 1901.

MARCH 1, 1894, Thomas A. Mansfield made an assignment for the benefit of his creditors to John Wyman, and the latter, by virtue of orders of court, continued the business and the manufacture of unfinished articles. March 31st an inventory was filed, and later the stock sold. Subsequently reports were made, exceptions thereto filed by Mooney & Son, creditors, and, on hearing, overruled, and the assignee ordered discharged upon the payment of certain specified sums. Mooney & Son appeal.—*Reversed.*

*Cummins, Hewitt & Wright* for appellants.

*Berryhill & Henry* and *Dudley & Coffin* for appellee.

LADD, J.—The sole question is whether the assignee has accounted for the trust property received. His inventory, filed March 31, 1894, showed property of the cost value of $55,823.40 on hand. There had been received $3,056.48 in cash for goods sold in the course of business, and not inventoried. In making an invoice in June following, goods of the cost price of $2,132.40, not included in the inventory, were found. He must, then, account for this cash and property listed at $57,955.80. In the course of trade he sold property inventoried at $16,-044.42. The report of the experts appointed to examine the books says this does not include the cash item above referred to, and it appears to be so conceded by counsel. The remainder of the property, invoicing $39,356.48, was sold for $17,370.84 in June. This accounts for $55,400.67, and leaves a balance of $2,555.13 to be explained. As the prices of the original inventory were used throughout, this indicates a shortage of goods to the amount stated, and not an estimated value. As observed, the $3,056.48 mentioned has been included in neither inventory nor the property accounted for; nor do we find it included in the reports of the assignee. The first, filed June 26, 1894, shows the receipt of $16,395.05; and the next and last, filed August 2, 1898, having been delayed by litigation (see *Groelzinger v. Wyman,* 105 Iowa, 574), indicates the receipt of the additional sums of $328.38 and $15 for property sold at retail, $244.78 as rebate on insurance, and $17,370.84 for goods sold in bulk, and interest thereon. It appears, then, that but $16,738.33 are accounted for as having been received for the goods not sold in bulk. But the evidence introduced by the assignee showed the goods invoicing $16,044.42 brought $18,191.93, less a discount of $1,064.92, which leaves a margin of $388.58 unexplained, to say nothing of the $3,056.48 entirely omitted. It should also be mentioned that this amount resulted from taking out $421.63 as profits. If profits, they belong to the estate, rather than to the assignee. Also certain expenses had been

deducted, and it is not certain whether or not these were included in the general account. The very purpose of the inventory exacted by the statute is to make a record of the property taken by the assignee; and, as it is prepared by him, or under his immediate direction, it should be accepted as *prima facie* evidence of what he has received, and the burden is on any one so asserting to prove its inaccuracy. *Batten v. Richards,* 70 Wis. 272 (35 'N. W. Rep. 542). See *Asay v. Allen,* 124 Ill. 391 (16 N. E. Rep. 865). As the property continues within his control, and is reduced by him to cash for the purpose of distribution, knowledge of its disposition is peculiarly within his keeping, and he must be held, as other trustees, to the duty of making a fair accounting of it. See section 3080, Code. Slight discrepancies, attributable to inevitable errors in handling so large a stock, might, indeed, have been ignored by the trial judge. But when, as here, these run up to thousands of dollars, an explanation is demanded. The fact of goods being found which were omitted from the inventory, does not alone justify the inference that a larger amount, not belonging to the assignor, was included; nor does the assignee's supposition that Mansfield, who was employed to make the inventory, swelled it for the purpose of aiding him in his proposed settlement with creditors. If, because of the inventory being carelessly made, or property being added which was not there, it was inaccurate, this was a matter of proof, and not of mere surmise or guess work. What will be a sufficient showing need not be considered until evidence has been offered bearing on that issue. It should be added that the court was doubtless mislead by errors appearing in the summary prepared by the experts appointed to examine the books, and who evidently gave more attention to computations which they were especially directed to make than to comparisons of invoices and reports. As Mooney & Son were entitled to a part of the proceeds to be distributed, they had the right to file exceptions and to be heard.—Reversed.